**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, | Case No. 15-04492-DD |
| Gup's Hill Plantation, LLC, | Chapter 11 |
| | **ORDER DENYING CONFIRMATION** |
| Debtor. | |

This matter is before the Court for confirmation of Gup's Hill Plantation, LLC's ("Debtor") chapter 11 plan and on a motion to value Apex Bank's claim secured by property known as the Edgefield Inn. Debtor filed an amended plan and disclosure statement on August 11, 2016 [Docket Nos. 222 and 223]. After further amendments to the disclosure statement, the disclosure statement was approved on February 1, 2017, and the confirmation hearing on Debtor's chapter 11 plan was scheduled for March 28, 2017 and was continued to April 21, 2017 [Docket No. 326, 382]. Objections to confirmation were filed by TD Bank, N.A., Apex Bank, the United States trustee, and Atlanta Postal Credit Union. [Docket Nos. 353-356]. Debtor filed a further amended plan on April 14, 2017 [Docket No. 385]. The parties indicated that the motion to value was resolved,[1] and it was not addressed at the April 21, 2017 hearing. At the conclusion of the confirmation hearing, the Court took the matter under advisement. The Court now issues this Order.

**BACKGROUND**

1.  Debtor filed its chapter 11 case on August 18, 2015.

2.  Debtor is a limited liability company. Bettis C. Rainsford is the sole member of Debtor.

---

[1] Counsel for Apex indicated that it agreed to accept Debtor's surrender of the Edgefield Inn in satisfaction of the debt as to Debtor, as proposed in Debtor's April 14 plan, but would not agree that the surrender satisfied the debt as to other obligors.

3. At the time of filing, Debtor owned multiple parcels of real property in or near Edgefield, South Carolina. Debtor's schedules indicate a total value of over $6,000,000 for these properties.

4. Apex Bank ("Apex"), one of Debtor's secured creditors, and the only remaining creditor objecting to confirmation, holds two claims. The first claim is secured by a hotel owned by Debtor known as the Edgefield Inn. The second involves a judgment lien that was originally obtained by SunTrust Bank. Debtor was not the original obligor on either of these claims. The claim secured by the Edgefield Inn arises from a loan originally made to Edgefield Inn, LLC, which merged into Debtor in July 2015. The judgment was originally obtained against Mr. Rainsford and others, not against Debtor, but the properties to which the judgment lien attached were subsequently transferred to Debtor.

5. Mr. Rainsford contests the validity of Apex's judgment based on an oral agreement he alleges existed between the parties. He filed an action against Apex in state court, and that action was removed to this Court in July 2016.[2] On Apex's motion, the adversary proceeding was dismissed with prejudice. An appeal is pending.

6. At the time the case was filed, Debtor's other secured creditors were AgSouth Farm Credit, ACA ("AgSouth"), Atlanta Postal Credit Union, TD Bank, N.A. ("TD Bank"), the Internal Revenue Service, Greg Anderson, Kathryn S. Rainsford, Southern First Bank, and the Edgefield County Tax Collector. During the pendency of the case, AgSouth's and TD Bank's claims have been transferred to Rocky Mount Investments, LLC ("Rocky Mount"), and Southern First Bank's claim has been transferred to Sommers Oil Co.

---

[2] *See* Adv. P. No. 16-80104-dd.

7. Debtor's initial disclosure statement and plan were filed on February 16, 2016. Multiple objections to the disclosure statement were filed, and it was withdrawn. A new disclosure statement and plan were filed on June 23, 2016 and amended on August 2, 2016, and August 11, 2016. The disclosure statement was amended yet again on August 21, 2016 and on October 20, 2016. Debtor's disclosure statement was approved on February 1, 2017.[3]

8. Throughout the case Debtor sold numerous parcels of real property and a significant amount of timber. These sales have resulted in Debtor being able to pay one secured creditor-AgSouth's successor, Rocky Mount-in full and make some payments to other creditors.

9. Debtor's August 11, 2016 amended plan proposes to treat twelve classes: nine secured classes, two unsecured classes, and Mr. Rainsford's membership interest.

10. Debtor's April 14, 2017 amended plan contains significant changes from the August 11 plan. The April 14 plan provides that the secured claim of AgSouth has been transferred to Rocky Mount and has been paid in full, and that the secured claim of TD Bank has also been transferred to Rocky Mount. In contrast to the August 11, 2016 plan, which proposed to make payments to Apex's secured claim on the Edgefield Inn (Class 3), the April 14, 2017 plan proposes for the first time to sell the Edgefield Inn, with Apex providing a loan to the purchaser for a portion of the sale price. The April 14 plan further provides that if Apex refuses to provide such a loan, then Debtor will deed the Edgefield Inn to Apex in satisfaction of the debt.

11. Both of Debtor's amended plans also contain language that "Confirmation of the Plan and acceptance of payments pursuant to this Plan shall constitute an agreement whereby all Creditors shall stay any collection action against all guarantors and/or co-debtors of any such

---

[3] On January 27, 2017, the Court entered an order stating that adequate information had been provided "[b]etween the testimony provided at the January 26 hearing, information provided on the record at previous hearings held in this case, the information provided to creditors in connection with related pending state court proceedings, and the disclosure statement and its modifications."

obligations as long as the Debtor is timely paying all claims as proposed in the Plan. This forbearance applies only to pre-petition claims that are to be paid pursuant to the provisions of this Plan, and shall not include any claims not provided in the Plan and absent any other default by the Debtor under the Plan, shall expire upon the Debtor's completion of the Plan." (the "Forbearance Provision").

    12.    Debtor's disclosure statement filed August 11, 2016 states:

> Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company, entities holding a membership interest are equity interest holders. In this case, the only such person is Bettis C. Rainsford ("The Interest Holder"). The equity interests of the Interest Holder shall be subordinated to the claims of all creditors of the estate. Such Interest Holder will redeem from the estate his ownership interest in the Debtor for the following consideration:
>
> As Interest Holder, Bettis C. Rainsford, will make a capital contribution in the aggregate amount of $1,000.00 to retain his equity positions in the Debtor. Further, Bettis C. Rainsford shall continue to guarantee the obligations of the Debtor to Creditors for whom he has guaranteed payment. The hearing on confirmation of the Plan shall constitute an opportunity for any creditor, party-in-interest, or other entity to submit a competing bid for the equity interest in the Debtor. The competing bid must exceed the sum of $1,000.00 plus the payment of all debt that has been guaranteed by the Interest Holder. The debt guaranteed by the Interest Holder includes the debt to AgSouth, APCU [Atlanta Postal Credit Union], Apex Bank I, TD Bank, Greg Anderson, Kathryn S. Rainsford (Class 6 Claim), Southern First Bank [transferred to Sommers Oil Co.] and the disputed Apex Bank II. All competing bids shall be filed with the Bankruptcy Court and served upon the United States Trustee, the Debtor, and counsel for the Debtor within ten (10) days prior to the date set for confirmation by the Bankruptcy Court.

This provision is not contained in the August 11 amended plan. However, a similar provision is contained in the August 21, 2016 amended disclosure statement:

> Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company, entities holding a membership interest are equity interest holders. In this case, the only such person is Bettis C. Rainsford (the "Interest Holder"). The equity interests of the Interest Holder shall be subordinated to the claims of all creditors of the estate. Such

4

> Interest Holder will redeem from the estate his ownership interest in the Debtor for the following consideration:
>
> As Interest Holder, Bettis C. Rainsford or a company owned by him, will make a capital contribution, or "new value," in the aggregate amount of $100,000.00 to retain his equity position or acquire a new equity position in the Debtor. These new funds will be used to address the critical need of the Debtor to upgrade the Edgefield Inn, which is the principal operating asset of the Debtor and the asset which can best generate cash for the payment of the obligations of the Debtor under the Plan. The Edgefield Inn is a critically-important amenity for the Town of Edgefield, inasmuch as it is the only hotel in town, and is the only place which can provide a significant number of overnight accommodations for weddings, funerals, business meetings, tourists and other visitors. The $100,000 investment will allow the Debtor to replace the floor coverings in the Inn, make critically-needed parking lot repairs and replace older furnishings and appliances.
>
> Further, Bettis C. Rainsford shall continue to guarantee the obligations of the Debtor to Creditors for whom he has guaranteed payment. The hearing on confirmation of the Plan shall constitute an opportunity for any creditor, party-in-interest, or other entity to submit a competing bid for the equity interest in the Debtor. The competing bid must exceed the sum of $100,000.00 plus the payment of all debt that has been guaranteed by the Interest Holder. The debt guaranteed by the Interest Holder includes the debt to AgSouth, APCU, Apex Bank I, TD Bank, Greg Anderson, Kathryn S. Rainsford, Southern First Bank and the disputed Apex Bank II, if allowed. All competing bids shall be filed with the Bankruptcy Court and served upon the United States Trustee, the Debtor, and counsel for the Debtor within ten (10) days prior to the date set for confirmation by the Bankruptcy Court. Any party-in-interest is free to propose an alternate plan of reorganization.
>
> Given the complexity of this reorganization and the diversity of the operations and assets of the Debtor, it would be very difficult, time consuming, cost-prohibitive and unproductive to attempt to market the opportunity to submit competing bids to a wide audience. However, the significant number of secured creditors who have followed this case from the outset and any persons who they might contact will provide the most likely source of competing bids. Therefore, in this case, the notification of the Debtor's creditors should satisfy the requirements of <u>Bank of Am. Nat'l Trust and Sav. Assoc. v. N. Lasalle St. P'ship</u>, 526 U.S. 434, 119 S. Ct. 1411 (1999).

The April 14 amended plan contains a further modified provision:

> Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company, entities holding a membership interest are equity interest holders. In this case, the only such person is Bettis C. Rainsford (the "Interest Holder"). The equity interests of the Interest Holder shall be subordinated to the claims of all creditors of the estate. Such

5

Interest Holder will redeem from the estate his ownership interest in the Debtor for the following consideration:

As Interest Holder, Bettis C. Rainsford or a company owned by him, will make a capital contribution, or "new value," in the aggregate amount of $25,000 to retain his equity position or acquire a new equity position in the Debtor.

Further, Bettis C. Rainsford shall continue to guarantee the obligations of the Debtor to Creditors for whom he has guaranteed payment. The hearing on confirmation of the Plan shall constitute an opportunity for any creditor, party-in-interest, or other entity to submit a competing bid for the equity interest in the Debtor. The competing bid must exceed the sum of $25,000.00 plus the payment of all debt that has been guaranteed by the Interest Holder. The debt guaranteed by the Interest Holder includes the debt to APCU, Apex Bank I, Rocky Mount Investments, LLC, Greg Anderson, Kathryn S. Rainsford, Sommers Oil Co., and the disputed Apex Bank II debt, if allowed. All competing bids shall be filed with the Bankruptcy Court and served upon the United States Trustee, the Debtor, and counsel for the Debtor within ten (10) days prior to the date set for confirmation by the Bankruptcy Court. Any party-in-interest is free to propose an alternate plan of reorganization.

13. Mr. Rainsford testified that no one had expressed interest in purchasing his equity interest in Debtor.

14. Rocky Mount, Greg Anderson, Kathryn S. Rainsford, and Sommers Oil Co. all filed ballots accepting Debtor's plan. Atlanta Postal Credit Union filed a ballot rejecting the plan, but subsequently reached a settlement with Debtor which was reflected in the April 14 plan. Apex filed ballots as to both of its claims rejecting the plan. The IRS and Edgefield County did not vote on the plan and did not appear at the confirmation hearing. The remainder of the unsecured creditors did not file proofs of claim, did not vote on the plan, and did not appear at the confirmation hearing.

15. At the confirmation hearing held April 21, 2017, Apex indicated that it was unwilling to fund a loan for the proposed purchaser of the Edgefield Inn. Apex agreed to the April 14 plan treatment which provided that the Edgefield Inn would be surrendered to Apex in satisfaction of the debt but clarified that it agreed only that the debt would be satisfied as to Debtor,

6

and not as to Mr. Rainsford or any other obligor. Accordingly, Apex did not consent to the Forbearance Provision contained in both of Debtor's amended plans.

16. Apex's representative, Patrick White, testified that prior to the hearing, Apex's understanding of the plan was that Debtor intended Apex to look to Talmadge Knight, Jr. and MV Development Company, LLC, co-obligors with Mr. Rainsford on the judgment, to collect on its Class 8 claim. Apex's belief in this regard is based on the following language in the April 14 plan:

> Apex II has asserted a non-recourse claim against certain real property of the Debtor in the amount of $1,130,260, but the claim is also against other parties who can doubtless contribute to the satisfaction of the claim. One of those parties, Talmadge Knight, Jr., has filed for Chapter 7 personal bankruptcy and lists assets and liabilities which suggest that his estate could pay almost the entire obligation. If it is determined that Knight had transferred substantial assets to his wife to avoid the claims of his creditors as Debtor's Interest Holder, B. Rainsford, believes, then the assets of Knight's personal estate could pay the entire claim. Apex II has already received some funds from the Knight estate. The other joint judgment debtor under the Apex II claim is MV Development Company, LLC which owns hundreds of thousands of dollars of assets which, if the claim is ultimately deemed to be allowed, can also be used to satisfy the claim. Therefore, the ultimate amount of the claim of Apex II against the Debtor is very uncertain and will remain so for some period of time.

Mr. White also testified that Apex believed, prior to the hearing, that because its claim for the judgment (Class 8) would not receive any payment under the plan, the Forbearance Provision did not apply to Apex's Class 8 claim.

17. Neither the specific parties subject to the Forbearance Provision nor the parties protected by the provision are named in either of Debtor's plans. Debtor indicated at the confirmation hearing that Debtor's intention was that the Forbearance Provision would not apply to all creditors, but would only apply to Apex's Class 8 claim, Rocky Mount, Atlanta Postal Credit Union, the IRS, and Edgefield County, and would prevent collection efforts against Mr. Rainsford and MV Development Co., LLC, as well as properties owned by either of those parties.

18. Mr. Rainsford testified at the confirmation hearing that the reason for the inclusion of the Forbearance Provision is to allow him to focus his efforts on ensuring Debtor's plan is successfully consummated once confirmed.

19. After the confirmation hearing held on April 21, 2017, Debtor filed another amended plan on April 24, 2017 [Docket No. 398]. Among other changes, the April 24 plan removes the alternative of surrendering the Edgefield Inn to Apex if Apex refuses to provide financing for the purchase of the Inn, but increases the proposed purchase price by $40,000.00 and provides that the unsecured portion of Apex's Edgefield Inn claim will be fully paid as a Class 10, general unsecured claim on the effective date of the plan. Apex filed a response to the April 24 plan, asking that it not be considered by the Court as it was filed after the confirmation hearing. The Court will not consider the April 24 plan and will focus its analysis, below, on the August 11 and April 14 plans.

## CONCLUSIONS OF LAW

11 U.S.C. § 1129 contains various requirements that a debtor's chapter 11 plan must meet before it can be confirmed. 11 U.S.C. § 1129; *In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 477 (Bankr. D.S.C. 2010). "Section 1129 states that if the requirements are met, the court "shall" confirm the plan; as a result, if all section 1129 requirements are met, a court has no discretion with regard to chapter 11 plan confirmation." *Gyro-Trac*, 441 B.R. at 477. "The debtor bears the burden of showing that the plan meets the criteria set forth in section 1129, and debtor must satisfy this burden by a preponderance of the evidence." *Id.* (citing *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000)).

The objection to confirmation filed by Apex argues that Debtor's chapter 11 plan is not confirmable for a number of reasons, including feasibility under section 1129(a)(11) and good

8

faith under section 1129(a)(3). However, at the hearing Apex indicated that it did not wish to present evidence as to these grounds. No other party contested confirmation, as any objections that had been filed were settled prior to the hearing and reflected in the amended plan filed on April 14. Based on the documents submitted throughout this case and the evidence presented in previous hearings, the Court finds that Debtor meets the applicable confirmation requirements set forth in section 1129(a)(1-7) and (9-16). Accordingly, it appears that the only remaining obstacles for confirmation are the fact that Apex and the unsecured creditors have not voted in favor of the plan, and the problems with the provision enjoining certain creditors from taking collection actions against Mr. Rainsford or MV Development discussed below.[4] For the reasons set forth below, Debtor's plan does not meet the requirements for confirmation set forth in section 1129 and accordingly, confirmation must be denied.

    **i.    Material Differences Between Approved Disclosure Statement and Plan**

The Court first notes that it has concerns about confirming either of Debtor's amended plans due to the material differences between the approved disclosure statement and the plans. There have been numerous amendments to both the disclosure statement and the plan; as a result, determining what document is actually before the Court can be confusing. Debtor's disclosure statement was approved on February 1, 2017, after multiple amendments. Subsequent to the approval of the disclosure statement, Debtor settled its disputes with Atlanta Postal Credit Union, the Class 1 and Class 4 claims of AgSouth and TD Bank have been transferred to Rocky Mount, the Class 7 claim of Southern First Bank has been transferred to Sommers Oil Co., Class 1 has been paid in full, and Ms. Rainsford's adversary proceeding for reformation of the release of her

---

[4] Although the IRS and Edgefield County have also not voted in favor of the plan, Debtor's plan proposes to pay both of these creditors in accordance with the requirements set forth in section 1129(a)(9)(C). Therefore, the plan otherwise meets the requirements for confirmation as to these two creditors.

lien, discussed in the August 11 plan's treatment of Class 8, has been settled. Additionally, the April 14 amended plan provides entirely new treatment for Apex's Class 3 claim and reduces Mr. Rainsford's new value contribution from $100,000 to $25,000, and thus adjusts the requirements for any competing bid. There are material differences between the disclosure statement that was approved by the Court and the August 11 and April 14 plans, and no further disclosure regarding those plans' terms has been made to creditors. *See* 11 U.S.C. § 1127; *In re Concrete Designers, Inc.*, 173 B.R. 354 (Bankr. S.D. Ohio 1994). In addition to the impediments to confirmation discussed below, the inconsistency between the disclosure statements and the plans is an additional reason to deny confirmation.

### ii. Section 1129(a)(8) and Section 1129(b)

Section 1129(a)(8) provides, as a requirement for confirmation, that each class of claims or interests provided for in the plan either accept the plan or be unimpaired under the plan. In addition to the IRS and Edgefield County, three classes - Apex's Class 3 and Class 8 claims, and Class 10, the unsecured creditor class - have not voted to accept Debtor's proposed plan. Thus, these creditors must either be unimpaired, or be "crammed down" under section 1129(b)(1), which provides, in relevant part:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> For purposes of this section, a class of claims or interests is impaired unless the plan:
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default –

10

> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;
> (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and
> (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124. "It is 'well established' that § 1124 defines impairment in very broad terms." *In re Schwarzmann*, 1996 WL 698072, at *3 (4th Cir. Dec. 6, 1996) (citing *L&J Anaheim Assoc. v. Kawasaki Leasing Int'l, Inc.*, 995 F.2d 940, 942 (9th Cir. 1993)). "Section 1124's broad definition of impairment requires a case-by-case, fact-intensive inquiry in which the Court must determine whether the plan itself, rather than the operation of a provision of the Bankruptcy Code, impairs a creditor's legal, equitable, or contractual rights." *In re Tree of Life Church*, 522 B.R. 849, 861 (Bankr. D.S.C. 2015). Debtor's plan proposes to alter the rights of all three classes that have not voted to accept Debtor's plan, at least in some respect. Therefore, all three classes are impaired, and confirmation is dependent on the provisions of section 1129(b).

I.   <u>Class 3-Apex Secured Claim.</u>

With respect to a secured class of claims, section 1129(b)(2)(A) provides that a plan is fair and equitable if: (1) the secured creditors retain their liens to the extent of the allowed amount of their claims, and they receive deferred cash payments totaling at least the value, as of the effective date, of the creditor's interest in the property, (2) the property securing the creditor's claim is sold and

11

the lien attaches to the proceeds, or (3) the secured creditor receives the "indubitable equivalent" of its claim. "In order to determine whether value exists to satisfy the indubitable equivalent requirement for a 'cram down,' the specific facts of each case should be considered and the litigants should 'focus [their] evidentiary presentations on the value of the surrendered property.'" *In re SUD Props., Inc.*, 2011 WL 5909648, at *4 (Bankr. E.D.N.C. Aug. 23, 2011) (quoting *In re The Legacy at Jordan Lake, LLC*, 448 B.R. 719, 723 (Bankr. E.D.N.C. Apr. 14, 2011)). "[P]lans proposing to surrender all of the property to which its lien attaches are 'fair and equitable' and the creditor receives the indubitable equivalent of its secured claim." *SUD Props.*, 2011 WL 5909648, at *5.

Debtor's April 14 plan proposes to either sell the Edgefield Inn and use the proceeds to pay Apex or, if Apex is unwilling to provide a loan to the purchaser, to surrender the Edgefield Inn to Apex in satisfaction of its secured claim. Apex indicated at the confirmation hearing that it was unwilling to provide funding for the purchase but indicated that it was willing to take the Edgefield Inn in satisfaction of the debt as to Debtor. If Debtor surrenders the Edgefield Inn to Apex, Apex will be receiving all property to which its lien attaches. Accordingly, it appears that Debtor's proposed treatment in surrendering the Edgefield Inn to Apex is fair and equitable and provides Apex with the indubitable equivalent of its claim, provided the claims against other obligors are not extinguished.

II.     Class 8- Apex Judgment Lien and Class 10-Unsecured Creditors.

Section 1129(b)(2)(B) provides, with respect to a class of unsecured claims, that to be fair and equitable, a plan must either provide that each unsecured creditor receive "property of a value, as of the effective date of the plan, equal to the allowed amount of such claim," or, if such class of unsecured claims is not being paid in full, any claim or interest that is junior to the unsecured class

is not receiving any property. This rule is known as the absolute priority rule. *See Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 442 (1999); *In re Eagan*, 2013 WL 237812, at *5 (Bankr. W.D.N.C. Jan. 22, 2013). Debtor's April 14 amended plan provides that, in the event Apex's claims do not become Class 10 claims, all Class 10 general unsecured claims will be paid in full on the effective date of the plan.[5] Alternatively, if Apex's claims do become Class 10 claims, Class 10 creditors will receive nothing under the plan. The unsecured creditors are not receiving any interest, attorney fees, or other fees under the plan; however, none have appeared or participated in the bankruptcy case, and so their claims are allowed in the amount scheduled. *See* 11 U.S.C. § 1111(a). If Apex's claim does not become part of Class 10, because the Class 10 unsecured creditors will receive the full amount of their allowed claims on the effective date of the plan, the Class 10 unsecured creditors would be unimpaired and therefore, under section 1129(a)(8), would be deemed to have accepted the plan.

However, with respect to Class 8, Apex's judgment lien, the plan provides that in the event Mr. Rainsford is unsuccessful in his pending appeal challenging the validity of Apex's judgment lien, Apex's claim will be unsecured as a result of Ms. Rainsford's lien, which has priority and exceeds the value of the collateral. Apex's claim would then become part of Class 10. Apex has filed an objection to confirmation and has filed a ballot rejecting the plan. As a result, because Apex has voted to reject the plan, if Apex becomes part of Class 10, that class will have rejected the plan, and the plan cannot be confirmed unless it can be confirmed over Apex's objection under section 1129(b)(2)(B).

Section 1129(b)(2)(B) provides:

For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

---

[5] This too, like the amendments to the disclosure statement and plans, is unduly confusing. In sum, it matters not whether the Apex unsecured claim is in Class 8 or 10, as it controls either or both classes due to its amount.

13

> (B) With respect to a class of unsecured claims—
>    (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>    (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

If Apex's Class 8 claim becomes part of Class 10, the plan provides that Class 10 creditors will receive nothing under the plan. Accordingly, in order to be fair and equitable, the plan must satisfy the "absolute priority rule" under section 1129(b)(2)(B)(ii). Even if Apex's Class 8 claim does not become part of Class 10, because Apex's Class 8 claim is receiving nothing under the plan, the requirements of section 1129(b)(2) still come into play.

Courts recognize an exception to the absolute priority rule, "whereby equity may retain an interest in a reorganized debtor over the objection of a class of creditors whose claims are not paid in full, in exchange for a fresh contribution of new capital." *Eagan*, 2013 WL 237812, at *6. "The new value exception requires a contribution of value that is '(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, and (5) reasonably equivalent to the value or interest received.'" *Id.* at *6 (quoting *In re Bonner Mall P'ship*, 2 F.3d 899, 908-09 (9th Cir. 1993)). The United States Supreme Court has stated that if a new value contribution is proposed by a current equity holder, other parties must have an opportunity to submit competing bids to purchase the equity interest as well. *See 203 North LaSalle Street P'ship*, 526 U.S. at 458 ("[A]ssuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).").

Debtor's August 11, 2016 plan indicates that Mr. Rainsford intends to contribute $100,000.00 of new value to retain his equity interest in Debtor. The April 14 plan reduces this amount to $25,000.00. Both plans also provide that any other party wishing to purchase the equity interest in Debtor can submit a competing bid. However, the plans also provide that any person who purchases the equity interest of Debtor also agrees to assume all debts guaranteed by Mr. Rainsford, including his debt to Ms. Rainsford, his ex-wife, stemming from their marital litigation. This provision has the effect of, at the least, chilling bidding for the equity interest in Debtor. It is highly unlikely that any party would be willing to assume these obligations in exchange for an interest in Debtor. In addition to substantially reducing his proposed contribution of new value in the plan filed just prior to the confirmation hearing, Mr. Rainsford has also placed requirements on any competing bids which have the practical effect of dissuading such bids. Accordingly, Mr. Rainsford's offer of new value does not meet the requirements for the new value exception to the absolute priority rule.

### iii. Third Party Injunctions

The Fourth Circuit has stated that approval of injunctions protecting nondebtors set forth in a chapter 11 plan should be granted "cautiously and infrequently." *Behrmann v. Nat'l Heritage Foundation*, 663 F.3d 704, 712 (4th Cir. 2011). When considering whether to approve an injunction of a non-consenting creditor's claim against a non-debtor as part of a debtor's chapter 11 plan, the Court should consider the following factors:

(1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
(2) The non-debtor has contributed substantial assets to the reorganization;
(3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
(4) The impacted class, or classes, has overwhelmingly voted to accept the plan;

15

    (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction;
    (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and;
    (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Behrmann*, 663 F.3d at 711-12 (quoting *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002)).

In this case, while some of these factors may be met, Apex, who Debtor intends to be bound by the Forbearance Provision, has not voted to accept the plan. The plan does not provide for any mechanism to pay anything on Apex's Class 8 claim. Additionally, the injunction would prevent Apex from attempting to collect on its judgment until the plan is completed, at least five years from the effective date of the plan. This would substantially limit Apex's ability to collect on its judgment, as the judgment was obtained in 2012. *See* S.C. Code § 15-35-810 (providing that judgments are valid liens on property for a period of ten years from the date of such final judgment).

Further, it is unclear who is protected by the Forbearance Provision. The language of the provision indicates that it applies to "Bettis C. Rainsford and others" but does not name who those "others" are. Additionally, it is unclear which creditors are enjoined by the Forbearance Provision. The Forbearance Provision does not specifically name certain creditors, but merely states it only applies to those pre-petition claims being paid under the plan. However, at the confirmation hearing, Debtor could not state with certainty which creditors it intended to be subject to the Forbearance Provision. Apex's representative testified that prior to the hearing, Apex had understood that the Forbearance Provision would not apply to its Class 8 claim, since it would not be receiving any payment under the plan. However, Debtor stated that it intended the Forbearance Provision to indeed apply to Apex's Class 8 claim. Additionally, as the United States trustee

16

pointed out at the hearing, because the plan language is unclear regarding the application of the Forbearance Provision, the IRS and Edgefield County are likely not on notice that it applies to them. Because at least two of the *Behrmann* factors are not met, and because there is substantial uncertainty regarding the scope of the Forbearance Provision, the plan cannot be confirmed.

## CONCLUSION

For the reasons set forth above, neither Debtor's August 11 nor April 14 plan can be confirmed. Confirmation of Debtor's chapter 11 plan is denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/03/2017**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 05/04/2017